# McArthur, Appellant, *v.* Tionesta Gas Company.

*Lease—Oil and gas lease—Instructions—Royalties.*

An oil and gas lease provided as follows: "The party of the first part is to receive the one-eighth ($\frac{1}{8}$) part of all the oil, gas or other minerals obtained therefrom, to be delivered to the party of the first part in the pipe line upon the premises." This was all printed except the words "one-eighth" and the fraction "$\frac{1}{8}$" and the words "in the pipe line," which were written. Further along in the lease was the following, all in writing: "Should gas be found in well or wells sunk on said demised premises, and should gas be taken off said premises and sold for compensation by said lessees, the said lessee shall pay to the said lessor $50.00 per annum for a gas pressure of 125 pounds to the square inch, and for each 125 pounds additional pressure an additional sum of $50.00 per annum." *Held,* that the court below committed no error in holding that the quoted clauses of the lease were in conflict, and that the last clause furnished the rule for compensating the lessor for all gas produced from the leased premises.

Argued May 15, 1905. Appeal, No. 215, April T., 1905, by plaintiff, from decree of C. P. Forest Co., May T., 1902, No. 2, on bill in equity in case of Seth C. McArthur, Trustee of Abner Hammond, deceased, v. Tionesta Gas Company. Before BEAVER, ORLADY, PORTER and MORRISON, JJ.    Affirmed.

Bill in equity for an account.

LINDSEY, P. J., filed the following opinion.

This bill was filed March 29, 1902, by Seth C. McArthur, trustee of the estate of Abner Hammond, deceased, against A. S. Allshouse and the Tionesta Gas Company. Service was obtained on the Tionesta Gas Company only.

At the first hearing in the case no evidence was taken. The plaintiff claimed that on the facts set forth in the bill, and admitted in the answer, he was entitled to a decree for an accounting. The defendant claimed that on the face of the bill, a court in equity had no jurisdiction and asked to have the bill dismissed. We could not see our way to do either, giving our reasons in a brief opinion then filed.

When the case came on again to be heard, evidence was taken from which with the undisputed allegations in the bill

and answer, together with the surrounding circumstances, we find the following facts :

1. On October 21, 1885, Charles W. Macy, trustee of the estate of Abner Hammond, deceased, late of Columbia county, New York, executed and delivered a lease for oil, gas and mineral purposes (except coal) on the south half of tract No. 2,825 in Forest county, Pennsylvania, containing 500 acres, more or less, to A. S. Allshouse, his heirs and assigns. Said Allshouse sold and assigned said lease to the Tionesta Gas Company on May 6, 1886.

2. The said lease contained the following stipulation, which is a part of the printed form of said lease and is all printed except the words and figures " one-eighth (1-8) " and the words " in the pipe-line." " The party of the first part is to receive the one-eighth (1-8) part of all the oil, gas, or other minerals obtained therefrom, to be delivered to the party of the first part in the pipe-line on the premises." Said lease also contained the following stipulation, written with pen and ink further along in said lease than the above quoted printed stipulation : " Should gas be found in well or wells sunk on said demised premises, and should gas be taken off said premises, and sold for compensation by said lessee the said lessee shall pay to the said lessor $50.00 per annum for a gas pressure of 125 lbs. to the square inch, and for each 125 lbs. additional pressure an additional sum of $50.00 per annum."

3. In the month of February, 1887, the Tionesta Gas Company drilled a well on said premises for oil, but found no oil; instead thereof gas was obtained, which has been taken off the premises and sold, the first sale having been made May 31, 1887. The gas pressure in that well was 452 pounds to the square inch, at first and diminished as stated in the answer.

4. No other wells were drilled until October 15, 1896, when four wells were drilled, from which gas was produced. No oil was ever produced on the premises.

5. Payments have been made by the defendant to Charles W. Macy, trustee, the predecessor of the plaintiff, for gas removed and sold from the premises, on the basis of $50.00 per annum for a gas pressure of 125 pounds per square inch, and an additional sum of $50.00 for each additional 125 pounds pressure per square inch, for the years from 1887 to 1895 both inclusive.

The dates and amounts of each payment are given in the answer and in the evidence; also the gas pressure for each year.

6. These payments were made by the defendant to be in full payment of the amount due by it and were received by Mr. Macy without objection by him or without his claiming anything more. No demand was ever made for anything more. Colonel Butler testified that he was sent to Tionesta in 1896 by Mr. Macy, and that he met the president of the Tionesta Gas Company, and Mr. Kelly, and he thought Mr. Robinson, both of whom were connected with the company, and that he told them that " We will require you to pay for one-eighth of all gas " in addition to some other things which he said he demanded at that time. But these gentlemen all denied the statement and we are unable to find as a fact that any demand was ever made for one-eighth of the gas.

7. It has been the general custom in the oil regions to divide the oil between the lessor and lessee by the lessee running the oil from the receiving tank at the wells into a pipe-line to the credit of the lessor and lessee according to their ownership as stated in the lease. This was the custom at the time the lease in question was made and it has continued to the present time. But no such custom prevailed in reference to gas either at that time or since. And there were no gas companies for the transportation of gas at the time the lease was made and there have been none since.

8. According to the evidence there was no market for gas in the vicinity of this property at the time the lease was made. One or two of the witnesses gave it as their opinion that the compensation stated in the written paragraph in the lease is a fair compensation as between the lessor and lessee.

9. The lessor never called for any division of the gas on the property prior to the filing of his bill. Never furnished any pipe-line or other receptacle to receive it. And never asked to take or have the gas pressure taken.

DISCUSSION OF THE QUESTION AT ISSUE.

The first question for us to determine is whether the plaintiff is entitled to one-eighth of the gas, and $50.00 per annum for every 125 pounds of gas pressure, or whether he is entitled to the latter only. And the solution of this question may aid

us in determining the question as to the plaintiff's right to relief in a court of equity.

That we must resort to construction in order to determine the actual contract between the parties is evident upon the face of the lease, for it states in the printed part that, "The party of the first part is to receive the one-eighth (1-8) part of all the oil, gas or other minerals obtained therefrom, to be delivered to the party of the first part in the pipe-line upon the premises." And then further on in a blank space is written with pen and ink, "And should gas be found in a well or wells, sunk on said demised premises, and should gas be taken off said premises and sold for compensation by said lessee, the said lessee shall pay to the said lessor $50.00 per annum for a gas pressure of 125 lbs. to the square inch, and for each 125 lbs. additional pressure an additional sum of $50.00 per annum."

These two paragraphs are inconsistent with each other. We must therefore endeavor to find out, if we can, the actual intention of the parties. To do this we must consider the subject-matter of the contract, the circumstances surrounding the parties at the time of its making and the customs relating to the business to which the contract related that would be likely to be known to the parties at the time of the making of the contract.

What, then, was the intention of the parties to this contract in relation to the gas? The printed clause contains the words "oil, gas or other minerals." Taking into consideration the evidence and the surrounding circumstances, there was no market value for gas at that time in the vicinity of the property. Oil was the principal mineral in that region and the only mineral sought for.

There were pipe-line companies or a pipe-line company for the transportation of oil, which received the oil at the wells on the premises, but there were no such gas companies which received gas on the premises. There was no difficulty, therefore, in providing that one-eighth of the oil should be delivered to the lessor in the pipe-line on the premises; but as to the gas it was different. There might be only enough gas found for use on the premises for fuel in drilling and pumping the oil wells. Or there might be a surplus, and therefore it would be natural for the parties to make some other provi-

sion in relation to the gas, and they did make the following :
" And should gas be found in well or wells sunk on said prem-
ises, and should gas be taken off said premises and sold for
compensation," etc.   This clause being in writing it is enti-
tled to greater weight than the printed clause by rules of
construction.   The parties might have made the matter plain
by the addition of a few words to the paragraph, but they did
not do so, and we are obliged to find out their meaning by
the application of those rules and principles which experi-
ence has led courts to adopt as the most rational and equita-
ble in discovering the intention of the parties.

In Grandin v. Insurance Company, 107 Pa. 26, Mr. Justice
PAXSON says : " The settled rule is that where the written
and printed portions are repugnant to each other, the printed
form must yield to the deliberate written expression : Har-
per v. Insurance Company, 22 N. Y. 441.   So far, therefore,
as this printed condition is applicable at all and conflicts with
the written portion of the contract, it must give away to the
latter."

In Duffield v. Hue, 129 Pa. 94, Mr. Justice CLARK said :
" The lease consists partly in a printed formula, prepared for
oil leases on the tract 498, and partly in written words in-
serted therein ; and the printed number, 498, it is conceded,
should have been changed to 497.   It is undoubtedly true
that in such case the written words are entitled to have
greater effect in the interpretation than those which are
printed, for written words are the terms selected by the par-
ties themselves to express their meaning in this particular
case, whereas the words of the printed form are of a more
general character, originally chosen for application to similar
subjects only, and frequently, as in this case, are by necessary
alterations and changes made to express, as near as may be,
the intention of the parties : Grandin v. Insurance Co., 107
Pa. 26 ; Haws v. Fire Association, 114 Pa. 431.   Whilst, by
the printed form, the leased premises are described as ' a cer-
tain lot or piece of land situate,' etc., it is plain from the writ-
ten clauses that the premises were to be operated at certain
designated points or ' sites ' only."

The rule of construction which attached more relative im-
portance to the written than to the printed part of a contract

is often a very useful one, and is recognized in many of our cases : Lane v. Nelson, 167 Pa. 602.

In Grandin v. Insurance Co., Judge PAXSON said : " We have a right to assume that the parties contracted with reference to the peculiar nature and situation of its subject-matter insured."

In Lacy v. Green, 84 Pa. 514, Mr. Justice WOODWARD delivering the opinion said : " Where the meaning of an agreement is doubtful its terms are to be considered in the light thrown on them by proved or admitted illustrative facts.   The situation in which the parties stand, the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation of an ambiguous contract.   The established usages of the trade or business to which the subject-matter of the agreement belongs, and the general customs of the community in the conduct of that trade or business, are also to be kept in view.".

In Wright v. Natural Gas Company, 2 Pa. Superior Ct. 219, Mr. Justice ORLADY in delivering the opinion said : " So long as parties call upon courts of justice to administer their contracts, they must accept them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed, and to this end courts take the language employed and apply it to the surrounding circumstances exactly as they believed the parties applied it."

The defendant claims that the parties themselves have construed the lease, as now contended by it, ever since gas was obtained and taken and sold off the lease.   It is a fact that the plaintiff's predecessor received the amount due under the written clause in the lease, from 1887 to 1895, both inclusive, and never raised any objection as to the amount or intimated in any way that it was not all that was due under the lease.

Mr. Brennan, who collected the money for the trustee, testified : " Q. All I am asking you is whether that was upon the basis of $50.00 for each 125 lbs. rock pressure, whether that was the basis of it ?   A. I believe it was,. and that it was in full compensation for the lease."

The evidence that the trustee received the money understanding it to be in full of the annual claim of the lessor growing out of the lease, is not entirely satisfactory, but his complete silence as to any other claim for so long a period of time, with the testimony of Mr. Brennan, indicates very strongly that he did. That the lessee paid it, understanding it to be in complete fulfillment of the requirements of the lease, there can be no doubt. If this was the construction put upon the lease by both parties, continued for so long a time, it is a very potent indication that such was the intention of the parties at the time the contract was made.

If there were any doubts or ambiguity arising upon a word implied in the clause of the contract under consideration, they would be effectually removed by its practical construction continuously put upon it by the conduct of the parties for so long a period : Topliff v. Topliff, 122 U. S. 121 ( 7 Sup. Ct. Repr. 1057).

Contemporary construction of a contract of the parties is entitled to very great weight, but it ought to appear with reasonable certainty that they were acts of both parties done with knowledge, and in view of a purpose at least consistent with that to which they are subsequently sought to be applied: Kane v. Fire Ins. Co., 199 Pa. 205.

The parties to a contract, where there may be some ambiguity, always have a right and can put their own construction upon their own lease, and it is a proper question to submit to the jury whether both parties agree to such a mutual construction, and the jury so finding should adopt such a construction as its own : Wright v. Natural Gas Co., 2 Pa. Superior Ct. 219.

After a careful consideration of all the facts and surrounding circumstances and applying the principles of construction as set forth in the authorities cited above, we are of the opinion that the intention of the parties as to compensation to the lessor, as set forth in the written paragraph in the lease, was to be in lieu of one-eighth of the gas provided for in the printed portion of the lease. That the lessor should receive both could not have been contemplated by the parties; for if the one-eighth of the gas was delivered to the lessor in the pipe-line upon their premises, as provided in the printed clause, the gas could not be taken off said premises and sold for a compensation by said lessee as pro-

vided in the written clause. Such a thing would be practically impossible. The one-eighth could not be run into the pipe-line without running the whole amount into it. It could not have been in the contemplation of the parties, for there was no pipe-line company purchasing gas on the premises, or receiving gas on the premises and transporting it, hence the written clause in the contract, by which the parties provided that should gas be found and should it be taken off the premises and sold it should be paid for according to the pressure per cubic inch.

Our conclusion is that the true intention of the parties was that in case gas was found, and in case it was sold off the premises, the compensation provided in the written paragraph was to be in full compensation to the lessor for the lease. A delivery of one-eighth of the gas in the pipe-line, as stated in the printed clause, was impracticable, if not wholly impossible, at the time of the making of the contract, and is still. The lessee was therefore compelled to sell the gas off the premises, paying the lessor the compensation provided in such case and cannot be compelled to deliver the one-eighth in the pipe-line or pay for its value in addition to the compensation stated in the written paragraph of the lease.

Having reached the above conclusion the question of equitable jurisdiction must next be considered.

Whether a court of equity has jurisdiction or not must be determined not by what may have been shown by the answer or testimony adduced in support thereof, but by what appears on the face of the bill : Adams's Appeal, 113 Pa. 449.

It was not clear from the face of the bill that the plaintiff had an adequate remedy at law, nor is it clear now after an answer and the evidence taken. The gas pressure of one well only appears from the evidence as we understand it, and there were four wells drilled, according to the evidence, commencing with October, 1896. Whether all the gas from these wells was sold off the premises or not, and if not how much, does not appear. If the gas pressure from all the wells should necessarily enter into the accounting, as seems to be claimed by the plaintiff from his request submitted, and if gas from all or only a part of them was sold off the premises, or only a part of the gas from all the wells was sold, the accounting would become a complicated question, and the remedy in

equity would be not only the most convenient but the most adequate.

Jurisdiction in equity depends not so much on the want of common-law remedy as upon its inadequacy: Bierbower's Appeal, 107 Pa. 14.

Where the remedy of law would be cumbersome, inconvenient and inadequate, equity will entertain jurisdiction: Boyd v. American Carbon Black Co., 182 Pa. 206.

In Bradly v. Jennings, 201 Pa. 473, it was stated in the opinion of the court below, quoting from 5 Pepper & Lewis's Dig. of Dec. 8774: " Wherever relief can be more easily administered in equity as in a case wherein the facts from which the account must be made up rest almost exclusively in the knowledge of the respondent, a court of equity has jurisdiction to decree an account." And again, quoting from the same authority and from Tully v. Felton, 177 Pa. 344: "So also where the accounts are complicated, or there is a community of interest in a common enterprise, with all the funds in the hands of one of the parties." This case was affirmed by the Supreme Court on the opinion of the court below.

The facts from which the account in this case must be made up rest almost exclusively with the defendant. The defendant only knows the pressure of the several wells drilled on the premises for the different years; and whether or not the gas from all has been sold off the premises; and if not from how many; and whether or not it has all been sold off the premises. And the money received therefor since 1895 is all in the hands of the defendant.

It was said by Mr. Justice GREEN, in Tully v. Felton, 177 Pa. 344: " Whether on the ground of discovery, which was absolutely necessary, or mistake, or complicated accounts, or community of interest in a common enterprise where all the accounts were in the hands of one of the parties, and the situation was one which involved a trust and confidence, it is perfectly clear that the only suitable and complete remedy was by a bill in equity." Some of these principles stated by Mr. Justice GREEN are applicable here. We do not think the law side of the court could afford a complete, adequate or convenient remedy.

We think also that discovery is necessary in order that the

plaintiff may obtain the gas pressure of the several wells for the different years since 1895.

The evidence shows that the plaintiff has been paid in full up to 1896, as provided in the written paragraph of the lease, and neither the discovery nor the accounting need go back of that date.

On exceptions the following decree was entered:

And now, to wit: September 16, 1904, on hearing the counsel for the respective parties on the exceptions to the findings and decree made September 2, 1904, the exceptions filed by plaintiff are overruled and dismissed, and the exceptions filed by defendant are all overruled and dismissed, except the first, which is sustained in part as follows : The four additional gas wells were not completed and producing gas until October 15, 1896, as shown by the contract. Therefore, the plaintiff would only be entitled to receive pay for the four wells for two and one-half months for 1896. The first paragraph of our statement of the account should be corrected so as to read as follows :

January 1, 1897, due plaintiff for gas sold during
  1896 for one well.      .      .      .      .      . $100.00
For four wells for 2 1-2 months      .      .      .      83.33
Interest thereon to Sept. 1, 1904 .      .      .      .      73.33
                                                        _____
  Total                                                 $256.66

So correcting the first paragraph the total amount due from defendant to plaintiff is $1,158.36.

The decree is, therefore, corrected to read $1,158.36, instead of $1,634.20, and being so corrected, the prothonotary is directed to enter it as the final decree.

*Error assigned* was the decree of the court.

*Samuel B. Coffin* and *J. W. Smith*, with them *F. P. Ray*, for appellant.—A fair construction of the whole lease would be to require the lessee to account for one-eighth of the net proceeds of the gas, as was provided in the lease in Fanker v. Anderson, 173 Pa. 86.

*T. F. Ritchey*, with him *Hinckley, Rice & Alexander*, for appellee.

OPINION BY MORRISON, J., July 13, 1905:

This is an appeal by the plaintiff from the decree of the court below in equity. The learned counsel for the appellant state in the printed argument: " The single question raised by the assignment of error is whether the defendant is liable for the one eighth of the gas taken off the premises and sold. Parties are bound by their contracts. Courts do not make contracts, but enforce those made by the parties."

This suit grows out of an oil and gas lease made October 21, 1885, and the whole question depends upon the construction of a few lines of said lease. It is conceded that if the court below rightly construed the lease, then the decree does full justice to the plaintiff. The lease is partly printed and partly written. The first language for construction is as follows: " The party of the first part is to receive the one-eighth ($\frac{1}{8}$) part of all the oil, gas or other minerals obtained therefrom, to be delivered to the party of the first part in the pipe line upon the premises." This is all printed except the words " one-eighth " and the fraction "$\frac{1}{8}$" and the words "in the pipe line," which are written. Further along in the lease we find the following, all in writing : " Should gas be found in well or wells sunk on said demised premises, and should gas be taken off said premises and sold for compensation by said lessees, the said lessee shall pay to the said lessor $50.00 per annum for a gas pressure of 125 pounds to the square inch, and for each 125 pounds additional pressure an additional sum of $50.00 per annum."

The learned court held that these quoted clauses of the lease are in conflict and that the latter furnishes the rule for compensating the lessor for all gas produced from the leased premises. The defendant contended that it was only liable upon the gas pressure of one well, but the court construed the lease to mean a gas pressure on each well drilled and producing gas. This construction required the defendant to pay five times as much as it contended for. But the defendant acquiesced in the decision, wisely we think, and, therefore, the only question of dispute is as stated in the opening of this opinion.

A careful examination of the lease and the evidence, and the discussion thereof, and the opinion of the learned court,

convinces us of the rectitude of his decision. We think the latter clause of the lease entirely disposes of the question of compensation for the gas.

The elaborate and convincing opinion of the court below so fully sustains the decree that we do not deem it necessary or profitable to enter into a further discussion of the case.

The assignments of error are all dismissed and the decree is affirmed at the costs of the appellant.